John Wesley Riggs, Minor, by Elwood Riggs, His Next Friend and Elwood Riggs, Appellees and Cross Appellants, v. William M. Barrett, Individually and as Administrator with the Will Annexed of Estate of Enid P. Barrett, Deceased, Appellant. Kathryn A. Culver et al., Appellees. Metropolitan Trust Company, Ancillary Administrator De Bonis Non with Will Annexed of Estate of Enid. P. Barrett, Deceased, Appellee and Cross Appellant. Ida Groves Gregory, Appellee. Continental Illinois National Bank and Trust Company of Chicago, Successor Trustee, Appellant.

Gen. No. 41,466.

Opinion filed February 26, 1941. Rehearing denied March 10, 1941.

McCULLOCH, McCULLOCH & McLAREN, of Chicago, for certain appellant; FRANK H. McCULLOCH and HERMAN L. TAYLOR and NED P. VEATCH, both of Chicago, of counsel.

ABRAHAM W. BRUSSELL, of Chicago, for certain other appellant.

DENEEN & MASSENA and HENRY H. KOVEN, both of Chicago, for certain appellee; MARSHALL A. PIPIN and DAVID BOGOLUB, both of Chicago, of counsel.

MAX M. GROSSMAN and SAMUEL GROSSMAN, both of Chicago, for certain other appellee and cross appellant; LOUIS N. GROSSMAN, of Chicago, of counsel.

WINSTON, STRAWN & SHAW, of Chicago, for certain other appellees and cross appellants; JAMES H. CART-

WRIGHT, ALBERT W. POTTS and GEORGE B. CHRISTENSEN, all of Chicago, of counsel.

MICHAEL F. RYAN, Guardian *Ad Litem*, for certain other appellees; RICHARD F. McPARTLIN, JR., of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

Enid P. Rupp and Elwood Riggs were married at Crown Point, Indiana, on June 3, 1919. Each of the parties had previously been married. The bride was the mother of Kathryn by a previous marriage. John Dorn was born on September 12, 1923. Elwood and Enid Riggs obtained the custody of John in December, 1923, when he was 3 months old. At that time the parties resided in Los Angeles, California. Enid and Elwood Riggs adopted John Dorn as their child in a decree entered in the superior court of California in and for the county of Los Angeles on May 22, 1924. The name of the child was changed to John Wesley Riggs. Kathryn, the daughter of Enid, took the name of Kathryn Riggs. She, however, was not adopted by Elwood Riggs. Clara Groves (now deceased), was the mother of Enid Riggs. Ida Groves Gregory is the sister of Enid Riggs. On March 18, 1925, at Los Angeles, California, Elwood and Enid Riggs executed a sealed instrument which recited that the parties were then living separate and apart "on account of certain irreconcilable differences," and that they desired to settle their respective property rights and interests. Elwood agreed to set up a trust. In accordance with this promise, on July 3, 1925, at Chicago, Illinois, Elwood, as settlor, and the Illinois Merchants Trust Company of Chicago, as trustee, executed and delivered a certain trust instrument. It was accepted by Enid as being in conformity with the property settlement agreement of March 18, 1925. Subsequently,

the Continental Illinois National Bank and Trust Company of Chicago became the successor trustee under the trust agreement. In the trust instrument of July 3, 1925, Elwood established a spendthrift trust in the principal amount of $250,000. The trustee was directed "to pay the net income from the said trust estate, in convenient instalments, to Enid P. Riggs, the former wife of the settlor, so long as she shall live, and said income shall be used by her for her own support and maintenance, and for the support and maintenance of her daughter, Kathryn A. Riggs and John Wesley Riggs, the adopted son of the settlor and said Enid P. Riggs." The instrument also indicated a desire to provide for Mrs. Clara Groves. The trust gave the income for life to Enid and gave her a general power of appointment by will over the corpus. In default of appointment the remainder was to go 4/5ths to Kathryn A. Riggs and 1/5th to John Wesley Riggs, with cross remainders between them and their issue. On April 3, 1925, Enid obtained an interlocutory decree of divorce from Elwood in the superior court of Los Angeles county, California, and on April 6, 1926, this decree was made final. On May 17, 1925, before the interlocutory decree was made final, Enid married one Ben B. Kitchen at Tia Juana, Mexico. Shortly thereafter this marriage was annulled. Elwood married Mabel Riggs. On November 26, 1932, Elwood and Mabel Riggs adopted John Wesley Riggs by virtue of a decree entered in the county court of Cook county, Illinois. Enid consented to the adoption. On April 8, 1933, in Cook county, Illinois, Enid married William M. Barrett. On January 14, 1935, a decree of divorce was entered in the superior court of Cook county, Illinois, dissolving the marriage between William Barrett and Enid Barrett. The complaint for divorce was filed by Enid. The decree found that "the plaintiff is and since prior to the filing of said complaint has been an actual resident of Cook County, and has been a res-

ident of the State of Illinois for over one whole year next before the filing of the complaint herein.'' Enid's complaint against William M. Barrett in the superior court of Cook county alleged that she was an ''actual resident of the County of Cook, aforesaid, and has been for more than two years last past and over a resident of the State of Illinois.'' It also alleged that the parties were married on May 8, 1933. The decree finds and the return on the marriage certificate shows that the marriage was performed on April 8, 1933, and that Enid gave her name as ''Miss Pearle Riggs.'' William Barrett and Enid were remarried in the State of Arkansas in October, 1936. Clara Groves, the mother of Enid, died prior to the year 1935. Kathryn A. Riggs, the daughter of Enid, married one Culver. Kathryn gave birth to Luana Culver. On November 8, 1940, Kathryn married George Knack, Jr. Enid died at Laramie, Wyoming, on August 7, 1937. Her death was caused by an automobile accident. Surviving her were William M. Barrett, her widower, Kathryn, her daughter, Ida Groves Gregory, her sister, and Luana Culver, her granddaughter. At the time of her death Enid was 47 years of age. Elwood Riggs is now 78 years of age. Kathryn is under the age of 35 years and her daughter Luana is a minor. John Wesley Riggs is now 17 years of age.

On June 29, 1928, Elwood Riggs filed a bill of complaint in the circuit court of Cook county, naming Enid P. Riggs, Kathryn A. Culver, John Wesley Riggs, Clara Groves, the trustee and unknown owners, as defendants. He sought the dissolution of the trust on the ground that it had been obtained by fraud. That litigation was compromised by a contract between Elwood and Enid. The contract was drafted by attorney Charles J. Kelly of Los Angeles, and was signed by the parties in that city on July 14, 1928. On August 9, 1928, on motion of complainant Elwood Riggs, and no appearances having been filed by any of the de-

fendants, the bill of complaint filed by him in the circuit court of Cook county was dismissed. The agreement of July 14, 1928, between Elwood Riggs, party of the first part, and Enid Riggs, party of the second part, provided that:

"For and in consideration of the covenants and agreements hereinafter contained on the part of the party of the first part, to be by him kept and performed, the party of the second part promises and agrees that at the time of her death, by Last Will and Testament, to bequeath to John Wesley Riggs, the adopted son of the parties hereto, the sum of $75,000, to be paid to the said John Wesley Riggs from out of the trust fund of $250,000, now held in trust by the Illinois Merchants Trust Company of Chicago, Illinois, for the benefit, among others, of the party of the second part herein, to be conditioned that until the said John Wesley Riggs reaches the age of thirty-five years the income only of said sum shall be paid to him, and upon his reaching the said age of thirty-five years then the said principal of $75,000 shall be paid to him, and on the further condition that if the said John Wesley Riggs shall die before arriving at the age of twenty-one years then said bequest to the said John Wesley Riggs shall fail and shall become null and void, and the said sum shall thereupon be distributed to Kathryn Riggs Culver, the daughter of the party of the second part hereto, as the residuary legatee in said Will to be named as such.

"The party of the second part further promises and agrees to bequeath all the rest, residue and remainder of the said $250,000 trust fund to the said Kathryn Riggs Culver, subject to the terms, conditions and provisions of the said trust instrument, and subject also to the condition that if the said Kathryn Riggs Culver shall die without issue of her body then the sum of $75,000 of the sum so bequeathed to her shall be bequeathed and distributed to Elwood Riggs, the party

of the first part hereto, or to his estate, in the event that he should die before the death of the party of the second part.

"The party of the first part hereby waives any and all right and/or claim of any nature or description that he may now have or that he might in any manner, at this time or at any time hereafter, assert for a cancellation or modification of the said trust instrument, and/or of the property settlement heretofore made between said parties, and, except as set forth herein, hereby ratifies and affirms said property settlement and said trust instrument.

"This agreement shall be binding upon the heirs, executors and administrators of the parties hereto."

The contract of July 14, 1928, was filed with the trustee as one of the trust documents. Following the execution of the agreement purporting to modify the trust instrument and on the same day (July 14, 1928) Enid made her will. It was drafted by attorney Charles J. Kelly of Los Angeles, and was made by her in that city. Elwood did not participate in drafting the will. It reads:

"SECOND—In accordance with the terms of an agreement made and entered into between Elwood Riggs and myself, bearing even date herewith, and to carry out the terms thereof, as well as for the reason that it is my desire and wish that John Wesley Riggs be amply provided for, I hereby give, will, devise and bequeath unto said John Wesley Riggs the sum of $75,000, to be paid to the said John Wesley Riggs from out of that certain trust fund of $250,000 now held by the Illinois Merchants Trust Company of Chicago, Illinois, upon the condition that until the said John Wesley Riggs reaches the age of thirty-five years the income only of said sum of $75,000 shall be paid to him, and upon his reaching the said age of thirty-five years then the said principal sum of $75,000, together with any increase or accumulated income therefrom, shall be

paid to him. Should the said John Wesley Riggs die before my death then the foregoing bequest shall become null and void.

"THIRD—I give, will, devise and bequeath unto my daughter Kathryn Riggs Culver all of the rest, residue and remainder of said trust fund of $250,000, namely, the principal sum of $175,000, on condition, however, that until the said Kathryn Riggs Culver reaches the age of thirty-five years the income only of said sum shall be paid to her, and upon her reaching the said age of thirty-five years then said entire principal sum of $175,000, together with any increase or accumulated income therefrom, shall be paid to her, with the further condition, however, that of said sum of $175,000 so to be paid to her the sum of $75,000 shall be for her use and benefit during the term of her natural life only, and upon her death without issue I give, will, devise and bequeath the said last mentioned sum of $75,000 to Elwood Riggs, or in the event of his death before my death, then to his estate; should said Kathryn Riggs Culver die leaving issue of her body surviving her then I give, will, devise and bequeath the said sum of $75,000 unto such issue as may survive her, share and share alike. In the event of the death of said John Wesley Riggs before arriving at the age of Twenty-one years, then I give, will, devise and bequeath unto my daughter Kathryn Riggs Culver the said sum of $75,000, to be distributed to her, however, in the same manner as provided herein for distribution thereof to said John Wesley Riggs, and being the same $75,000 hereinbefore provided to be bequeathed to the said John Wesley Riggs.

"FOURTH—Having complied with the terms of the said agreement hereinbefore mentioned, as to the distribution of my said estate, I now provide for the distribution thereof should the said Kathryn Riggs Culver die before my death, without issue of her body surviving her; In the event of the death of my daughter

Kathryn Riggs Culver, before my death, without issue of her body surviving her, then and in such event I give, will, devise and bequeath unto James Gregory, of Glencoe, Cook County, Illinois, the sum of $50,000 of the said remaining sum of $175,000, and I give, will, devise and bequeath unto John Wesley Riggs the sum of $125,000 thereof, being the amount remaining; each of said sums to be paid and distributed to the respective parties in the same manner as hereinbefore provided, but on the condition, however, that the said bequest of $125,000 to John Wesley Riggs shall be subject to the payment of the income therefrom to my mother, Clara Groves, should she survive me, during the term of her natural life, and upon her death only to be given to said John Wesley Riggs, as hereinbefore provided, and to confirm such income therefrom unto my said mother, Clara Groves, I hereby give, will, devise and bequeath unto the said Clara Groves, during the term of her natural life, should she survive me, the use and income of said $125,000 hereinbefore bequeathed to said John Wesley Riggs.'' On September 27, 1935, Elwood Riggs filed a second complaint, attacking the trust. He repeated the allegations of fraud of the previous complaint, and in addition thereto alleged newly discovered facts and misconduct on the part of Enid while married to him and a conspiracy by her and Kathryn in procuring the trust. John Wesley Riggs' interests were not to be jeopardized by this litigation if Elwood won completely because Elwood, by amendment to the complaint, offered that any decree therein should contain ''such reservations or provisions as shall . . . seem meet, establishing or affirming a right or claim on behalf of John Wesley Riggs, to the sum of $75,000 out of the corpus of the trust.'' The suit was bitterly contested on the pleadings and in preliminary motions, but before the trial the adult parties, being Elwood the settlor, Enid the income beneficiary, and Kathryn the contingent re-

mainderman agreed upon a settlement. Guardians *ad litem* and trustees were appointed for all possible contingent remaindermen or those having mere expectancies. Under a rule to show cause, they were required by the court.to report whether the settlement proposed was in the best interests of the minors. The guardians and trustees reported that it was. On May 15, 1936, a decree was entered which was consented to by all of the adults. The essence of this settlement and decree was to permit the withdrawal from the corpus of $50,000 to be paid to Elwood and $25,000 to be paid to Enid, and to confirm, ratify and hold ''valid, binding and enforceable'' the three trust documents, being (1) the original property settlement agreement providing for the establishment of the trust (2) the original trust indenture and (3) the contract of 1928 modifying the trust by limiting the power of appointment. On February 3, 1936, while the last-mentioned cause was pending, Enid made a second will. This will was executed in Illinois. The second will, in part, reads:

''*Second.* Under the Power of Appointment given me under the Fourth Clause of the Trust Agreement executed by Elwood Riggs, July 3rd, 1925, in which the Illinois Merchants Trust Company was appointed Trustee, and under which the Continental Illinois National Bank and Trust Company is the Successor-Trustee, I give, devise and bequeath unto my daughter Kathryn A. Culver, the sum of $125,000 payable in cash or property of the above mentioned Trust Estate, in the manner hereinafter directed.

''*Third.* Under the Power of Appointment given me under the Fourth Clause of the Trust Agreement Executed by Elwood Riggs, July 3rd, 1925, in which the Illinois Merchants Trust Company was appointed Trustee, and under which the Continental Illinois National Bank and Trust Company is the Successor-Trustee, I give, will, devise and bequeath unto my

sister Ida Groves Gregory, the sum of $75,000 payable in cash or property of the above mentioned Trust Estate, in the manner hereinafter directed.

"*Fourth.* All the rest, residue and remainder of my estate, real, personal and mixed, of every kind and nature and wheresoever situated, of which I die seized or possessed or which I may be entitled at the time of my death, (including any and all legacies, bequests and devises hereinabove in this my will set forth, which may have lapsed or failed by reason of the death of the legatee or devisee prior to my decease,) I give, devise and bequeath to my daughter Kathryn A. Culver and my sister Ida Groves Gregory, to be divided equally between them.

"*Fifth.* I nominate and appoint Lewis F. Baker, of the City of Chicago, County of Cook and State of Illinois, to be Executor and Attorney of this my Last Will and Testament . . . ."

In April, 1936, Elwood Riggs filed a petition for leave to settle. On April 11, 1936, Enid and Kathryn filed their answer to the petition, wherein they stated that "the allegations in said petition contained are true and correct, and these defendants consent thereto, and by reason thereof join in the prayer of the said petition." Enid swore to the answer. It will be observed that this answer was filed about 2 months after Enid made her will cutting off the minor, John Wesley Riggs, and the contingent remainder, if any, of Elwood. In accordance with the decree of May 15, 1936, the trustee, from the corpus of the estate, delivered $50,000 to Elwood and $25,000 to Enid, thereby depleting the corpus by the sum of $75,000. Shortly after the death of Enid (August 7, 1937) it became apparent that the last will which she left (February 3, 1936) was contrary to the provisions of the decree. On December 16, 1937, John Wesley Riggs, a minor, and Elwood Riggs filed the instant complaint. They

prayed that the decree of May 15, 1936, be declared to be in full force and effect and a valid and binding obligation of Enid, and a lien upon the trust estate in the hands of the trustee; that the purported will of February 3, 1936, be decreed to be null and void "in so far as the same violates the rights and property of these plaintiffs under the agreements of March 18, 1925, July 3, 1925, and July 18, 1928, and the aforesaid decree of May 15, 1936"; and for the entry of an order directing the trustee to set aside as of August 7, 1937, and hold the sum of $75,000 for John Wesley Riggs in accordance with the agreement dated July 14, 1928, and directing payment of income therefrom to John Wesley Riggs. The case was heard by the chancellor, who on June 6, 1940, entered a decree which found that John Wesley Riggs had sustained the allegations of the complaint as amended; that he was entitled to the relief sought, except that his interest must abate ratably with that of Kathryn Culver; that the claim which Elwood Riggs asserted to a remainder or reverter to the amount of $75,000 if Kathryn "should die without issue of her body" was not sustained; that such condition was fulfilled by the birth of Luana Culver; that by reason of the payments made under the decree of May 15, 1936, the corpus of the estate was reduced to $171,975; that the contract of July 14, 1928, and the decree of May 15, 1936, were not intended to provide a specific or demonstrative legacy in the sum of $75,000 to John Wesley Riggs, but merely to a 3/10ths share of whatever the corpus of the trust might be at the death of Enid; that various fees and expenses therein specified should be paid; that on August 7, 1937, the date of the death of Enid, the reasonable market value of the corpus of the trust was $178,876, and the accrued income on that date was $1,320.90, which accrued income was properly distributable to the estate of Enid. Thereupon the chancellor entered

his decree in accordance with such findings. The decree also reserves jurisdiction of the cause for the purpose of enforcement thereof and administering the trust. The will of Enid was admitted to probate in the State of California and William M. Barrett was appointed administrator with the will annexed. Ancillary administration thereunder is pending in the probate court of Cook county, Illinois. Lewis F. Baker was appointed ancillary administrator. He died. The Metropolitan Trust Company was then appointed ancillary administrator *de bonis non* with the will annexed. The ancillary administrator filed a counterclaim asking that the funds of the trust be turned over to it for distribution to whomsoever the court should determine is entitled thereto. The trustee and Ida Groves Gregory, the sister of Enid, prosecuted separate appeals, which have been consolidated. The Metropolitan Trust Company, as ancillary administrator *de bonis non* with the will annexed of the estate of Enid P. Barrett, deceased, filed notice of a cross appeal, as did Elwood Riggs and John Wesley Riggs. After the commencement of the litigation in the instant case, Kathryn was declared incompetent by a California court, and thereupon Michael Ryan was appointed to act as her guardian *ad litem*. After the entry of the decree appealed from, Kathryn was restored as a sane person and her California guardian was discharged, save for the duty of filling his final account. Michael Ryan was also appointed guardian *ad litem* for Luana Culver, a minor. He now appears as guardian *ad litem* for Luana and as attorney for Kathryn A. Culver Knack.

Ida Groves Gregory, the sister of Enid, contends that the contract of 1928 between Elwood and Enid as to how she should exercise her power of appointment by will is not enforceable against the trust on Enid's failure to exercise the power in the manner provided in that agreement; that a contract by a

donee of a power of appointment by will as to how the donee should exercise the power by will is void; that to enforce the 1928 contract would be to give it the force of an amendment to the trust, which cannot be as all of the parties having an interest in the trust were not parties to the agreement; that the 1936 consent decree did not amend the trust agreement by substituting the terms of the 1928 contract for those of the trust agreement which provide for a general power of appointment by will and for takers on default of appointment; that except to authorize the withdrawal of $75,000, the consent decree does not purport, nor did the court or the parties intend, to amend the trust agreement; that the 1936 consent decree cannot be given the effect of impliedly amending the trust agreement as the court, on behalf of the minors and unborn persons, did not consent to have them bound by the terms of the 1928 contract; that a decree must be interpreted with reference to the other parts of the record, such as the pleadings, the issues, and any settlement agreement in pursuance to which the decree is entered; that a consideration of the provisions of the decree in the light of the petition for settlement, the answers thereto and the other pleadings in the case, discloses that the court was neither asked to nor did it consent on behalf of the minors and unborn persons that such beneficiaries of the trust should agree to or otherwise be bound by the 1928 agreement; that the effect of the consent decree of 1936 depends on the strength of the consent of Elwood and Enid; that as a consent decree is not a judicial determination, but rests on the agreement of the parties and as Enid and Elwood could not contract in the original instance as to how the general power of appointment by will should be exercised, they could not subsequently validate their otherwise invalid contract by consenting to a decree that the contract was valid; that even if the contract of 1928 were valid, either by itself or on the strength of the 1936 consent

decree, plaintiffs are not entitled to specific performance; that plaintiffs' only remedy is against the estate of Enid for damages for breach of contract, and that if the corpus of the trust is insufficient to pay in full the amounts appointed by will to Kathryn Culver and Ida Groves Gregory, these appointments should be abated proportionately. The parties cite numerous cases to support their positions. It is obvious that the 1936 decree could not and was not a consent decree as to the minors. As to the adults, it was a consent decree. A search of the authorities convinces us that a decree entered by consent of the parties is binding upon them and cannot be reversed or impeached, except for fraud. (*Knobloch v. Mueller*, 123 Ill. 554, 565; *Merriam v. Merriam*, 207 Ill. App. 474, 478.) The 1936 decree is in full force and is binding on the parties, but Ida Groves Gregory insists that the court on behalf of the minors and unborn persons, did not consent to have them bound by the terms of the 1928 contract. We disagree with this contention. The record shows that the rights and interests of the minors were brought to the attention of the court, and that the court, on behalf of the minors and unborn persons, consented to have them bound by the terms of the 1928 contract. In view of the fact that the 1928 contract was submitted to and passed upon by the circuit court in the 1936 decree, it is unnecessary for us to decide whether such contract would be invalid without the aid of the 1936 decree. The fact is that all of the parties were brought before the court and that the court, with full knowledge of the facts, entered the 1936 decree, no one appealed from that decree, and it remains in full force and effect. Enid consented to the entry of the decree. Without her consent, the decree would not have been entered. Having consented to the entry of the 1936 decree, it was clearly her duty to make a will in accordance with that decree. She concealed from the chancellor the fact that only 2 months before she filed her

answer, wherein she requested the court to approve the settlement, she had made a will exercising the power of appointment in a manner inconsistent with the 1928 agreement, which the court, in effect, approved. This conduct on the part of Enid was not in good faith with the court. We agree that Ida Groves Gregory and William M. Barrett stand in the shoes of Enid. Clearly, Enid was bound by the decree. We hold that Ida Groves Gregory has no greater rights than Enid. The chancellor was right in decreeing that the 1928 agreement was valid and that it is binding on all of the parties. The 1936 decree recognized and stamped as binding the modification of the trust as evidenced by the 1928 agreement, and the court approved the trust as modified in the 1928 agreement. It must be remembered that the complaint filed in 1935 sought to destroy the trust. The stamp of approval placed by the court on the 1928 agreement gave John Wesley Riggs the right to expect that Enid would exercise the power of appointment in his favor to the extent of $75,000 in accordance with the provisions of such agreement. It would be inequitable to allow Enid, or those standing in her place, after having induced the court to approve the settlement, to later renounce her solemn promise, thus cutting the minor off without a penny. To so hold would be to ignore the actions and attitude of the parties during their course of dealings. Enid and Elwood exercised a commendable parental interest in the minor, John Wesley Riggs, by giving effect to the agreement of 1928 and the decree of 1936. The intent of the parties as expressed in writing and by their conduct, is thus carried out. It will also be observed that on the day the 1928 agreement was executed Enid also made a will in an attempted compliance with the terms of the 1928 agreement. By the terms of the 1936 decree Enid was permitted to withdraw $25,000 from the corpus of the estate and Elwood was permitted to withdraw $50,000. We assume that the court and all of

the parties, consenting to the depletion of the estate by the sum of $75,000, recognized that in so doing they were also giving greater security to John Wesley Riggs, the minor, and to Kathryn Culver. Mrs. Gregory insists that plaintiffs' only remedy is against the estate of Enid for damages for breach of contract, and that plaintiffs are not entitled to specific performance. Our view is that a court of equity is an appropriate forum to enforce a trust. To hold as Mrs. Gregory contends would be to deprive John Wesley Riggs of an adequate remedy.

John Wesley Riggs and Elwood Riggs contend that the decree is erroneous in ordering an abatement as between John Wesley Riggs and Kathryn Culver. When the 1936 settlement agreement was made by Elwood, Enid and Kathryn, those parties agreed to reduce the trust from $250,000 to approximately $171,975. It is contended that John was not a party to and did not consent to the reduction. The decree appealed from provides that John should stand part of that reduction, and that the $171,975 should go approximately $51,591 to John and $120,384 to Kathryn, rather than $75,000 to John and $96,975 to Kathryn. Plaintiffs contend that the agreement of 1928 clearly provides for a gift of $75,000 to John Wesley Riggs in the nature of a demonstrative legacy with a residuary gift to Kathryn A. Culver. Counsel for Kathryn and Luana Culver argues that the decree is correct in ordering an abatement as to John Wesley Riggs and Kathryn Culver. The will made by Enid on July 14, 1928 tends to support the argument for an abatement. This will, however, is not binding on the minor John Wesley Riggs. Having carefully considered the proposition, we are convinced that the agreement of July 14, 1928, which was approved by the decree of 1936, required Enid to bequeath to John Wesley Riggs the sum of $75,000, and the rest, residue and remainder to Kathryn Riggs Culver. At the time of the 1936 de-

cree Kathryn Culver possessed all of her faculties. All of the parties were represented by counsel. The language of the 1928 agreement is unambiguous. We are of the opinion that the chancellor was in error in ordering an abatement as between John Wesley Riggs and Kathryn Culver.

Plaintiffs also contend that the phrase "die without issue" in the 1928 agreement is to be construed as meaning "die without issue surviving." In the 1928 agreement a contingent remainder is provided for Elwood Riggs, or his estate, to the extent of $75,000, in the following language:

"The party of the second part further promises and agrees to bequeath all the rest, residue and remainder of the said $250,000 trust fund to the said Kathryn . . . subject . . . to the condition that if the said Kathryn Riggs Culver shall die without issue of her body then the sum of $75,000 of the sum so bequeathed to her shall be bequeathed and distributed to Elwood Riggs . . . or to his estate." The instrument was executed in California and was drawn by a California lawyer. Elwood Riggs calls attention to section 1071 of the California Civil Code which reads:

"Sec. 1071. Meaning of 'heirs' and 'issue,' in certain remainders. Where a future interest is limited by a grant to take effect on the death of any person without heirs, or heirs of his body, or without issue, or in equivalent words, such words must be taken to mean successors, or issue living at the death of the person named as ancestor." The question is, shall the phrase "die without issue" be construed as meaning "die without having had issue" or "die without issue surviving?" If the former definition is adopted, then the condition has been fulfilled with the birth of Luana, and the decree is correct in giving Kathryn's portion to her outright. If the latter definition is adopted, the condition can-

not be determined until the possibility of issue in Kathryn has ceased and Luana and any other children she may have had, may have predeceased her. The parties concede that under the Illinois decisions, unless a contrary intention is shown, the words are construed as meaning ''died without having had issue.'' (*Noth v. Noth,* 292 Ill. 536.) Article 5 of the original trust instrument provides that under a certain contingency the corpus of the trust shall be paid in accordance with the statute of descent of the State of Illinois. The original trust was established in the State of Illinois; the trustee and the corpus have been here at all times, and the three suits involving the trust were filed in this State. The divorce action by Enid against Barrett also proceeded on the basis that she was a resident of the State of Illinois.

We are of the opinion that it was the intention of the parties that the trust should be governed by the law of Illinois. We hold that the phrase ''die without issue'' in the 1928 agreement should be construed as meaning ''die without having had issue.'' As Kathryn gave birth to a daughter, Luana, the condition has been fulfilled and the decree is correct in giving Kathryn's portion to her outright.

A brief filed in behalf of the Metropolitan Trust Company, as ancillary administrator, in addition to the points above discussed, urges that the trial court should have ordered the corpus of the trust (after paying the expenses of the trust) turned over to the Illinois ancillary administrator of the estate of Enid P. Barrett, deceased, for distribution either in accordance with the provisions of her last will and testament, or in accordance with the decree of the court. We find that it is the law of this State that the trustee should distribute directly to the appointees and that the trust funds do not pass through the administrator of the donee of the power of appointment. Furthermore, the trust instrument provides that upon the death of Enid,

the trustee "shall pay over, convey and deliver all of the trust estate as it shall then be constituted to such person or persons, corporation or corporations, in such amounts and upon such terms as the said Enid P. Riggs shall by her last will and testament lawfully direct." The parties contemplated that the trustee would administer the trust. Hence, the chancellor was right in ruling that the trust funds should not be distributed through the estate of Enid P. Barrett. The Illinois ancillary administrator also maintains that the chancellor should have allowed a reasonable fee to it and its attorneys for services rendered in connection with this cause, to be paid out of the corpus of the trust. It argues that in order to determine which of several diverse claims to the trust fund were valid, it became necessary to construe the provisions of the trust involved and indirectly the will of Enid P. Barrett, and that it is just and equitable that attorneys' fees of necessary interested parties, particularly of the administrator, which have been incurred in procuring the judicial construction, should be borne by the trust estate. We agree with the statement of opposing counsel that no construction of the will of Enid P. Barrett was involved. The ancillary administrator and its attorneys did, however, render valuable services in presenting to the court the contentions of the creditors of Enid P. Barrett, deceased. We are of the opinion that for this service a reasonable fee should be allowed to the ancillary administrator and its attorneys.

It is further contended that the creditors of Enid P. Barrett, deceased, have such an interest in the trust fund that they should have been made parties, because Enid P. Barrett, by exercising the power of appointment given to her by the trust agreement dated July 3, 1925, subjected the trust property to the claims of her creditors to whatever extent other available property is insufficient to pay her creditors. The ancillary

administrator urges that under the equitable rule that "one must be just before he is generous," the trial court should have found and ordered that all claims allowed in due course of administration against the estate of Enid P. Barrett should be paid first. This administrator also urges that the creditors of Enid P. Barrett are not necessary or proper parties to the suit as they are represented by an ancillary administrator *de bonis non* with the will annexed, of her estate. Having concluded that the 1928 agreement, as approved by the 1936 decree, so amended the trust as to give Enid a special or limited power of appointment, it follows that her creditors can assert no claim against the corpus of the trust. The trustee is bound by the 1936 decree and cannot now assert that the power given to Enid is general. The donee of a special power is required to exercise the trust as stipulated and cannot appoint to the donee's creditors. As the power to appoint given to Enid is a special power, it is unnecessary for us to decide whether the rule that when the donee of a general power makes an otherwise effective appointment by will to a volunteer or creditor, the property appointed can be subjected to the payment of claims of creditors of the donee or claims against his estate to whatever extent other available property is insufficient for that purpose, is the law in this State. It is also contended that William M. Barrett, widower of Enid, has an interest in the trust funds. We are of the opinion that our discussion of the previous points disposes of his claim. Enid had the right to the income from the corpus during her lifetime, and was required to appoint certain donees by her last will and testament. At the time of her death she had no interest in the corpus of the estate to which he could attach any claim.

The trustee states that Lasher B. Gallagher, an attorney of California, asserts a claim by assignment from Kathryn A. Culver of one sixth of her interest

in the trust, and that he should be made a party to the suit. The trustee further states that some of the parties in the trial court argued that the assignment of Gallagher was not valid. It is obvious that the validity of the assignment and the rights of Gallagher, if any, have not been adjudicated. We believe it would have been better practice had Gallagher been made a party. However, the decree does not direct the disbursement of any of the trust assets except as may be necessary to pay fees. John Wesley Riggs's share is to be held in trust for approximately 17½ years. Kathryn's share is not to be disbursed until the further order of the court. There are ample assets to protect the trustee. The decree reserves jurisdiction for the purpose of administering the trust. The trustee in our opinion is justified in withholding distribution of the corpus of the estate, except for fees and expenses, until the claim of Gallagher is adjudicated or disposed of. As to the point urged by the trustee that the creditors of Enid have such an interest in the trust fund that they should be made parties, we are of the opinion that her creditors were represented through the Metropolitan Trust Company, the administrator *de bonis non* with the will annexed. This administrator argued the rights of Enid's creditors before the chancellor and also presented a comprehensive brief in their behalf in this court. Furthermore, we hold that the creditors of a donee of a limited power have no right against the appointed fund. The circuit court in 1936 adjudicated that the power in the trust was to remain a limited power. The trustee was a party to that proceeding and is bound thereby. It cannot now be heard to argue that the power is a general power. We are of the opinion that it was not necessary to make the creditors of Enid P. Barrett, deceased, parties to the complaint.

During the pendency of the appeal, the attorney for Kathryn A. Culver moved the court "to authorize and direct the Continental Illinois National Bank and Trust

Company of Chicago, as trustee, to pay directly to Kathryn A. Culver the monthly installments of $250.00 heretofore authorized by order of the trial court to be paid for the support of said Kathryn A. Culver and Luana Culver, in lieu of making such payments to Dr. Henry C. Crozier, California guardian of the estate of Kathryn A. Culver and the person of Luana Culver, minor." The trustee filed objections to the allowance of the motion. The motion was taken with the case. This is a court of review. In our opinion, this motion should be presented to the chancellor. Therefore, the motion is not entertained.

For the reasons stated, the decree of the circuit court of Cook county is reversed and the cause remanded with directions to enter a decree not inconsistent with the views expressed herein.

*Reversed and remanded with directions.*

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.