## HOWARD T. GILLIS ET AL. *v.* FRANK L. GILLIS ET AL. (13834)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and MENT, Js.

Argued January 10—decision released March 27, 1990

*Ben A. Solnit,* with whom, on the brief, was *David W. Schneider,* for the appellants (defendants).

*Maureen Danehy Cox,* for the appellees (plaintiffs).

COVELLO, J. This is an appeal from the denial of the motions of the defendant Frank L. Gillis[1] to open or set aside stipulated judgments rendered by the trial court that purported to settle all claims arising out of two actions brought by the plaintiff, Howard T. Gillis,[2] against the defendant. The principal issue is whether the trial court, in denying the defendant's motions, acted unreasonably and in clear abuse of its wide discretion in determining such matters. Because the trial court's conclusion is amply supported by the evidence found in the record, we find no error.

On July 19, 1983, and August 8, 1983, the plaintiff initiated two actions against the defendant, his brother. In the first action[3] the plaintiff sought to recover more than $300,000 for legal and administrative services that he had rendered to the defendant's insurance business. He also sought $519,000 representing the balance due on two promissory notes. In the second action[4] the

---

[1] Frank L. Gillis, Gillis Underwriters, Inc., and Frank L. Gillis, Inc., were the named defendants in case number CV83-0066146S. Frank L. Gillis and American National Bank were the named defendants in case number CV83-0066211S. The case was withdrawn as to the defendant American National Bank on October 4, 1988. We refer to the remaining defendants herein as the defendant.

[2] Howard T. Gillis, Howard T. Gillis, P.C., and Howard T. Gillis, trustee for his children, were the plaintiffs in case number CV83-0066146S. Howard T. Gillis was the only plaintiff in case number CV83-0066211S. We refer to the plaintiffs herein as the plaintiff.

[3] Case number CV83-0066146S. See footnotes 1, 2, supra.

[4] Case number CV83-0066211S. See footnotes 1, 2, supra.

plaintiff claimed the return of $40,000 that the defendant had allegedly taken without permission from the plaintiff's personal savings account.

On October 4, 1988, the day trial was to begin, the parties appeared in court and requested that the trial court render judgment in accordance with their stipulation. The stipulation was thereafter recited for the record. The parties agreed: that judgment might enter for the plaintiff in both actions to recover from the defendant the sum of $300,000; that this sum would be paid within six months together with interest from the date of judgment at 10 percent; that the plaintiff and the defendant would exchange mutual releases of any and all claims and that the releases "would be specifically including any claims made regarding Spartan Properties[5] and arbitration arising from them"; and that the plaintiff would be entitled to any receivables due to Gillis Underwriters, Inc., and Frank L. Gillis, Inc. The trial court thereafter rendered judgments in accordance with the parties' agreement.

On February 1, 1989, the defendant moved to open or set aside the stipulated judgments. The defendant claimed that he had not consented to the judgments as rendered and that the stipulation was founded upon accident or mistake. On March 17, 1989, the trial court conducted a hearing on the motions. The defendant, his former counsel, Donald McPartland, and the plaintiff all testified.

The defendant testified that he had intended to dispose only of the pending lawsuits and that he had not understood that the exchange of releases was to include a claim that he had against the plaintiff concerning

---

[5] The final settlement specifically included claims that the defendant held against the plaintiff regarding Spartan Properties, in North Haven. Spartan Properties is a parcel of property jointly owned by the parties which was not the subject of either action.

Spartan Properties. Both the plaintiff and the defendant's former counsel testified that the parties' agreement was correctly reflected in the judgments as rendered by the court and that their agreement, as the judgments stated, had included the exchange of mutual releases as to *all* claims.

On March 20, 1989, the trial court denied the defendant's motions to open or set aside the stipulated judgments. On April 10, 1989, the defendant filed this appeal with the Appellate Court. We thereafter transferred the appeal to ourselves pursuant to Practice Book § 4023.

The defendant first claims that the trial court erred in denying his motions to open when the evidence in the whole record demonstrated that the stipulated judgments were entered into without the defendant's understanding or consent. Specifically, he claims that the releases ordered in the stipulated judgments were not to include his claims concerning Spartan Properties.

A stipulated judgment "is not a judicial determination of any litigated right. *New York Cent. & H. R. R. Co.* v. *T. Stuart & Son Co.,* 260 Mass. 242, 248, 157 N.E. 540 [1927]; *Dulles* v. *Dulles,* 369 Pa. 101, 107, 85 A.2d 134 [1952]. It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. *Owsiejko* v. *American Hardware Corporation,* 137 Conn. 185, 187, 75 A.2d 404 [1950]; *Risk* v. *Director,* 141 Neb. 488, 496, 3 N.W.2d 922 [1942]. '[It is] the result of a contract and its embodiment in a form which places it and the matters covered by it beyond further controversy.' 3 Freeman, Judgments (5th Ed.) p. 2774. The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement,

the court has entered judgment conforming to the terms of the agreement. *Harter* v. *King County,* 11 Wash. 2d 583, 591, 119 P.2d 919 [1941].

"It necessarily follows that if the judgment conforms to the stipulation it cannot be altered or set aside without the consent of all the parties, unless it is shown that the stipulation was obtained by fraud, accident or mistake. *Riggs* v. *Barrett,* 308 Ill. App. 549, 564, 32 N.E.2d 382 [1941]; *Byron* v. *Concord National Bank,* 299 Mass. 438, 443, 13 N.E.2d 13 [1938]; *Barnes* v. *American Fertilizer Co.,* 144 Va. 692, 720, 130 S.E. 902 [1925]; 3 Freeman, op. cit., § 1352. For a judgment by consent is just as conclusive as one rendered upon controverted facts. *Fidelity & Casualty Co.* v. *Jacob Ruppert, Inc.,* 135 Conn. 307, 313, 63 A.2d 849 [1949]." *Bryan* v. *Reynolds,* 143 Conn. 456, 460–61, 123 A.2d 192 (1956).

In determining whether a stipulated judgment was, as is claimed here, the product of accident or mistake, we have observed: " ' "A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. See *Manchester State Bank* v. *Reale,* 172 Conn. 520, 523–24, 375 A.2d 1009 (1979); *State* v. *Fahey,* 147 Conn. 13, 15, 156 A.2d 463 (1959). In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. *State* v. *Bitting,* 162 Conn. 1, 11, 291 A.2d 240 (1971); *E. M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 612, 153 A.2d 463 (1959)." *Celanese Fiber, Division of Celanese of Canada, Ltd.* v. *Pic Yarns, Inc.,* [184 Conn. 461, 466–67, 440 A.2d 159 (1981)].' *Acheson* v. *White,* 195 Conn. 211, 214–15, 487 A.2d 197 (1985)." *Yanow* v. *Teal Industries, Inc.,* 196 Conn. 579, 583, 494 A.2d 573 (1985). "The manner in which [this] discretion is exercised will not be disturbed so long as the court could

reasonably conclude as it did. *DiPalma* v. *Wiesen,* 163 Conn. 293, 298, 303 A.2d 709 (1972); *E. M. Loew's Enterprises, Inc.* v. *Surabian,* [supra, 611].'' *Ridolfi* v. *Ridolfi,* 178 Conn. 377, 379, 423 A.2d 85 (1979).

Applying these standards, we find that the trial court's conclusion is amply supported by the evidence in the record. Although the defendant testified that he did not intend to release his claim concerning the Spartan Properties and that the remarks that he made in court contained no reference to other claims, there were two others who testified to the contrary. Further, the transcript of the earlier proceedings specifically refers to the the release of the Spartan Properties claim. The issue is not what the defendant's subjective understanding of the agreement was but whether, from his remarks and other conduct during the course of the negotiations and especially at the time the stipulation entered on the court record, a reasonable person would conclude that he had agreed to release the Spartan Properties claim.

In its memorandum of decision, the trial court addressed the defendant's claim that his statement in court made no reference to other claims. The trial court stated: ''The remarks of Miss Cox [the plaintiff's attorney] and of Howard Gillis make it crystal clear that the settlement involved all claims. Although the remarks of Frank Gillis make reference to only these two cases, he in no way disavowed the broader arrangement.'' As the factfinder, the trial court was also entitled to credit the later testimony of the plaintiff and the defendant's former attorney Donald McPartland that the defendant fully and completely understood and freely consented to the terms of the stipulation, which terms included the release of the Spartan Properties claim. See *Griffin* v. *Nationwide Moving & Storage Co.,* 187 Conn. 405, 422, 446 A.2d 799 (1982); see also *Acheson* v. *White,* supra; *State* v. *DeForge,* 194 Conn. 392, 398,

480 A.2d 547 (1984); *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 220, 435 A.2d 24 (1980).

The defendant further claims that he was prejudiced because he was unrepresented by counsel at the time the stipulated judgments were rendered. Examination of the record discloses that on the day trial was to begin, McPartland filed a motion to withdraw his appearance and a motion for a continuance to allow the defendant to obtain new counsel. Citing the defendant's history of noncooperation and delay, the trial court granted the motion to withdraw but denied the motion for a continuance. Negotiations followed. The defendant asked McPartland, now his former counsel, to serve as his advisor or liaison during the settlement negotiations. McPartland agreed and conveyed the various offers and counteroffers that eventually produced the stipulation that was thereafter recited in open court and became the stipulated judgments that are the subject of this appeal. While the record corroborates that the defendant was technically unrepresented at the time the judgments were rendered, he does not claim a specific prejudice nor does our examination of the record disclose one.

Finally, the defendant claims that the trial court erred in relying upon its own recollections of "in chambers discussions" in determining the motions to open or set aside the stipulated judgments. In its memorandum of decision the trial court stated: "I distinctly recall that part of the discussion in chambers had to do with an agreement that all outstanding disputes were to be resolved by the settlement and the only question as to that was whether that would be accomplished by exchange of general releases or by incorporation in the stipulated judgment. The latter technique was agreed upon." The defendant claims that this statement infected the decision making process and created an

appearance of partiality. It is a well settled general rule that courts will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court via a motion for disqualification or a motion for mistrial. See *Cameron* v. *Cameron,* 187 Conn. 163, 168, 444 A.2d 915 (1982); *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 615–16, 236 A.2d 466 (1967); see also *Sunbury* v. *Sunbury,* 13 Conn. App. 651, 655, 538 A.2d 1082 (1988), rev'd on other grounds, 210 Conn. 170, 553 A.2d 612 (1989). Because it was apparent, at the time of the hearing, that the motions would be heard by the same judge who had participated in the proceedings leading to the stipulated judgments, we conclude that the defendant waived this claim by failing to file a motion for disqualification at that time.

In considering the propriety of recollection or observation evidence, we have held in land valuation cases that visual observations made by the trier on a visit to the property are acceptable evidence. See, e.g., *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra. We also have credited as acceptable evidence the trial court's observations of what has occurred in the courtroom. See, e.g., *Armstrong* v. *Dolge,* 130 Conn. 516, 518, 36 A.2d 24 (1944) (two counsel had conferred from time to time during the proceedings); *State* v. *Mosca,* 90 Conn. 381, 384–85, 97 A. 340 (1916) (jurors assent to the verdict by nodding of heads, etc.). Findings based upon recollection, however, run the risk of making the trial court "an unsworn witness to material facts without the defendant having any opportunity to cross-examine, to offer countervailing evidence or to know upon what evidence the decision would be made." *Kovacs* v. *Szentes,* 130 Conn. 229, 233, 33 A.2d 124 (1943).

The trial court in the present instance made it clear that reference to its recollection "has nothing to do with whether or not the judgment correctly expressed the

agreement or whether or not it was based upon accident or mistake. It does, however, *have a great deal to do with the defendant's credibility."* (Emphasis added.) Although it undertook to do so in this instance, the trial court had no obligation to articulate the reasons why it elected to believe or disbelieve a given witness. Since the trier of fact is the sole arbiter of this issue, we may not pass upon the credibility of witnesses nor the reasons that the trial court assigns in making this determination. *State* v. *DeForge,* supra; see also *Lupien* v. *Lupien,* 192 Conn. 443, 445, 472 A.2d 18 (1984); *Griffin* v. *Nationwide Moving & Storage Co.,* supra; *Kaplan* v. *Kaplan,* supra.

In the alternative, even if the trial court had committed error in stating its recollection, such error was harmless, since there was substantial independent evidence in the record, specifically the testimony of the plaintiff and the defendant's former counsel, that the stipulation was to include the mutual release of all claims. See *Anonymous* v. *Norton,* 168 Conn. 421, 429–30, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975); *Mei* v. *Alterman Transport Lines, Inc.,* 159 Conn. 307, 316–17, 268 A.2d 639 (1970).

There is no error.

In this opinion the other justices concurred.