[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO OPEN JUDGMENT CT Page 8504
The issue presented here is whether a financial award in an uncontested decree of dissolution of marriage based on a signed separation agreement, may be opened or clarified or remanded for a new trial.
The parties were married October 19, 1974, at Mystic, Connecticut, and their marriage was dissolved by decree dated August 4, 1993 (Hurley, J.).
The sole issue arises out of the following provision on pages 3-4 of the decree: "And it is ordered that the plaintiff's Stock Savings Investment Plan" (SSIP) shall further be divided by Qualified Domestic Relations Order where the defendant shall be awarded the sum of $65,600 from the plaintiff's plan. The parties shall cooperate to complete the necessary paperwork to divide this plan. The plaintiff shall retain the remaining amount."
 I.
The defendant wife, by motion filed September 10, 1993, now seeks to open the judgment on the ground of mistake, because the $65,600 to be transferred to her from the husband's plan is taxable to her for federal and state income tax purposes upon withdrawal from the plan contrary to her belief that the sum was to be "clear" or tax free to her.
The court heard testimony from both parties, and oral argument from counsel. Later, counsel also submitted a transcript of the proceedings before Judge Hurley and briefs. The court finds the following facts.
On August 4, 1993, the parties appeared with counsel in open court before Judge Hurley and proceeded to an uncontested dissolution of their marriage. They presented to judge Hurley a twelve-page comprehensive agreement entitled "Marital Dissolution Agreement" which the court reviewed and found fair and equitable. The court thereupon incorporated the agreement into the judgment. The parties were each represented by counsel with long experience as practitioners in domestic relations matters. The husband's counsel drafted the agreement which was signed and acknowledged by both parties. The wife's CT Page 8505 counsel drafted the Qualified Domestic Relations Order (QDRO) which was submitted to the trial court and approved by it, by signature of the clerk, under date of August 4, 1993, although it is not clear when the QDRO was actually signed. The decree itself contains the legend above each counsel's signature: "I hereby certify that the foregoing judgment file conforms to the judgment entered by the court." See Practice Book Sec. 338; however, the QDRO is not signed by either of the parties or counsel. The QDRO contains the following relevant language on page 3: "It is further ordered and adjudged that (sic) alternate payee shall be solely responsible for all income taxes on the SSIP monies awarded herein and shall indemnify and hold participant harmless from any liability." In the QDRO, the participant is identified as the husband and the alternate payee is identified as the wife.
The court also finds that the wife consulted with an accountant with respect to income tax implications and consequences during the negotiations which led up to the agreement and uncontested dissolution. Also, the court finds it significant that wife's counsel who represented her throughout the proceedings leading up to the decree, also represented her on her motion to open the judgment. He did not testify with respect to what advice he gave her, if any, with respect to the income tax consequences of the transfer by QDRO of $65,600 of the husband's SSIP funds.
The SSIP funds are only taxable to the wife upon her withdrawal of such funds without a rollover to an IRA or other appropriate pension/retirement investment vehicle.
It is axiomatic that there must be a meeting of the minds of the parties to a contract. It has long been the practice in Connecticut to approve judgments of dissolution of marriage in an uncontested proceeding based on an agreement of the parties. "With . . . judicial supervision, private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine." Baker v. Baker, 187 Conn. 315, 322 (1992).
Under our statutes, a court has an affirmative obligation, in dissolution proceedings to determine whether a settlement is fair and equitable under the circumstances. See General Statutes Sec. 46b-66. CT Page 8506
"The presiding judge has the obligation to conduct a searching inquiry to make sure that the settlement agreement is substantially fair and has been knowingly negotiated." Monroe v. Monroe, 177 Conn. 173, 183-184, cert. denied, 444 U.S. 801
(1979). Although the trial court did not inquire specifically as to the taxable consequences of the QDRO transfer when the parties were before it, the court could presume that the taxable consequences of transfers of interests in SSIP or retirement pension benefits were commonly known, at least among experienced practitioners such as counsel here, especially where counsel drafted the QDRO accomplishing the transfer. There is nothing in the record to the contrary.
The wife's motion to open the judgment was filed within the four-month period provided by Practice Book Sec. 326, which provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which it was rendered or passed. The parties may waive the provisions of this action or otherwise submit to the jurisdiction of the court." General Statutes Sec. 52-212a is identical. Such a motion is addressed to the trial court's discretion. Pump Services Corporation v. Roberts, 19 Conn. App. 213, 215 (1989); Acheson v. White, 195 Conn. 211, 215 (1985); Celanese Fiber v. Pic Yarns, Inc., 184 Conn. 461, 467 (1981).
"While such a motion should not be readily granted nor without strong reasons, it ought to be when there appears cause for which the court acting reasonably would feel bound in duty so to do." Steve Viglione Sheet Metal Co. v. Sakonchick,190 Conn. 707, 711 (1983).
Here, the court finds, based on the evidence and the inferences reasonably drawn therefrom, that there are no strong reasons to open or set aside the judgment. The wife appeared intelligent and articulate and is a registered nurse. She was represented by experienced counsel. She consulted an accountant at least twice concerning the financial aspects of the dissolution of her marriage. She herself owned an Individual Retirement Account (IRA), a retirement plan, and a "Thrift Savings" plan, which were shown on Sec. 4G and Sec. 4H of her financial affidavit filed on the date of the decree. Section 4G is entitled "Deferred Compensation Plan" and included her thrift CT Page 8507 savings plan. These assets are generally known and understood to be income tax deferred and to become taxable only upon withdrawal.
In fact, the transcript of the proceedings before Judge Hurley in which she was questioned by her attorney reveals in relevant part:
 Q And you have reviewed the agreement with me prior to today's date prior to hearing it recited?
A Yes.
 Q As a matter of fact, many of the clauses are specifically in there at your request and you and I have discussed each and every clause in detail, have we not?
A Yes, sir.
Q You understand this agreement?
A Yes.
 Q You believe it to be fair and equitable and under the circumstance (sic) are you asking His Honor to adopt this agreement as your dissolution judgment?
A Yes.
Her subjective understanding that she was under the impression that the $65,600 to be transferred to her was to be "clear" as net of federal and state income taxes is not persuasive. Moreover, she is able to transfer or "roll-over" the $65,600 under federal law to her IRA or other appropriate retirement/pension type vehicle and defer taxation until her retirement, or until age 59 1/2 or beyond without incurring taxation. This claim of the defendant fails, as the court sees no strong reasons to disturb the finality of this judgment.
II. CT Page 8508
The defendant further claims that the judgment should be opened because of mistake.
Our Supreme Court has recently said:
 "A stipulated judgment is not a judicial determination of any litigated right. It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. It is the result of a contract and its embodiment in a form which places it and the matters covered by it beyond further controversy. The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement.
 It necessarily follows that if the judgment conforms to the stipulation it cannot be altered or set aside without the consent of all the parties, unless it is shown that the stipulation was obtained by fraud, accident or mistake.[1]
 For a judgment by consent is just as conclusive as one rendered upon controverted facts." Gillis v. Gillis, 214 Conn. 336, 339-340
(1990) (internal citations and quotation marks omitted).
A mutual mistake is defined as one common to both parties where the written instrument fails to express the real agreement or transaction and effects a result which neither intended. See Lopinto v. Haines, 185 Conn. 527, 532 (1981). CT Page 8509 There is no mutual mistake fitting this definition in this case. The husband testified he was aware of the taxable consequences of the transfer by QDRO, and he knew that income taxes were deferred as to him, while this fund appreciated, until withdrawals were actually made by him, and that when and if the wife made withdrawals, they would be taxable to her. The court finds this testimony credible.
This case is more closely akin to the claim of mistake rejected in Celanese Fiber v. Pic Yarns, supra, (claim that judgment of $75,000 should be satisfied by payment in Canadian currency rather than United States currency because that was in accord with prior business practice of parties rejected), see also Gillis v. Gillis, supra, (claim that stipulated judgment purported to settle all claims arising out of two actions between the parties did not include another related claim not then in suit rejected; and, holding issue was not what the defendant's subjective understanding of the stipulation was, but whether a reasonable person would conclude from the conduct of the negotiations as a whole, whether the defendant intended to release the related claim).
Here, the defendant relies solely on her subjective understanding that the $65,600 was to be net to her, so that coupled with other funds from the settlement, she could purchase another home. In the light of all of the evidence to the contrary, this claim is simply not persuasive.
 III.
The defendant finally argues that even if the mistake was unilateral, then to enforce the judgment as it stands would be unconscionable. She cites Retstatement, [Restatement] Contracts, 2d, Sec. 153(a) for that proposition.
The short answer to this claim may be that made by the Appellate Court in Solomon v. Keiser, supra, at page 427. "The flaw in [the] argument is that the mistake must be mutual; a unilateral mistake will not suffice." However, that case involved a motion to open judgment filed more than four months after its entry. Also, the question of unilateral mistake coupled with unconscionability was not before the court. In Lopinto, supra, our Supreme Court, considering the issue of whether a unilateral mistake coupled with inequitable conduct of the other party, would result in the reformation of a contract, held that CT Page 8510 it could, if shown by clear and convincing evidence. The court sees no significant difference between that doctrine and the case of a unilateral mistake coupled with an unconscionable result, as a court having equitable powers, as here, must do equity.
Even if this doctrine may be applied to this case, the defendant has failed to meet her burden of proof. Section 153, Restatement, Contracts, 2d, states in relevant part:
 "Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performance that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in Sec. 154, and (a) the effect of the mistake is such that the enforcement of the contract would be unconscionable. . . ."[2]
The defendant, having the burden of proof, has simply failed to meet her burden of showing that she should not bear the risk under Section 154. Further, she has failed to meet the substantial burden of showing unconscionability, as the record is utterly devoid of any evidence that would show the position she would have been in had the $65,600 not been taxable upon immediate withdrawal and the position she is actually in as a result of her mistake. See Restatement, Contracts, 2d, Section 153, Comment c.
An examination of the settlement agreement and judgment in comparison to the parties' financial affidavits shows that the wife was to receive from the "marital assets" in addition to $125 per week child support for the youngest child in her custody, while the husband had the two oldest in his, the following: the sum of $50,000 from the husband's refinancing of the home; her thrift savings plan of $17,000, her retirement valued at $531, her IRA of $9,300, the QDRO transfer from husband's SSIP of $65,600 and her Volvo automobile valued at $4,000, for a total of $146,431 less $2,500 of liabilities to be assumed by her, netting about $144,000. CT Page 8511
Putting aside the $25,000 in savings bonds to be held in trust for the children by the parties, the husband was to receive: the balance of the equity in the family home of $78,000 (not adjusted for expenses of refinance, closing costs, etc. ), an EB retirement plan valued at $47,612, an IRA of $27,000, the remainder of the SSIP (after transfer of $65,600 to the wife) of $20,278 and his Dodge auto having an equity of $3,500 for a total of $176,390 less liabilities assumed by him of $24,300, netting about $152,000 set out to him. The court also notes that the husband's net income from his job and U.S. Navy retirement is almost $1,200 per week, (with his SSIP deduction added back), while the wife's net income from her nursing job, is $420 per week (with her TSP and IRA added back) and that no periodic or lump sum alimony was awarded her, despite a marriage of almost nineteen years. This difference in net post-dissolution income is ameliorated somewhat by the child support of $125 per week to be paid by husband to wife. The court also notes that the husband would have the custody of the two older children and would be required to maintain a three-person household, while the wife would have to maintain a household of two. On this record, considering the statutory factors in General Statutes Sections46b-81, 46b-82 and 46b-84, the court cannot say this result, taken as a whole, is unconscionable. Accordingly, for the above reasons, the defendant's motion to open judgment is denied.
Teller, J.