HOUSING AUTHORITY OF THE CITY OF STAMFORD *v.* FRITZ LAMOTHE ET AL.
(9905)

DALY, FOTI and LAVERY, Js.

Argued February 10—decision released June 9, 1992

*Dennis J. O'Brien,* with whom, on the brief, was *Roberta Hatch,* for the appellant (defendant Lucienne Lamothe).

*Mark H. Henderson,* with whom, on the brief, was *Kristi M. Agniel,* for the appellee (plaintiff).

DALY, J. The defendant Lucienne Lamothe appeals following the trial court's denial of her motion to open a judgment by stipulation in a summary process action. The defendant[1] claims that the trial court's refusal to open the judgment without conducting an evidentiary hearing constituted an abuse of discretion.

In August, 1990, the plaintiff Stamford Housing Authority instituted a summary process action to recover possession of the premises at 213 Connecticut Avenue in Stamford for nonpayment of rent. Named as defendants in the summary process action in addition to Lucienne Lamothe were her husband and her two daughters. The plaintiff alleged that they failed to pay the July, 1990 rent. On July 20, 1990, a notice to

---

[1] Lucienne Lamothe is the only defendant involved in this appeal. References to the defendant are to Lucienne Lamothe.

quit possession was served. On September 21, 1990, the defendant and her husband filed answers admitting all the allegations in the plaintiff's complaint. They did not raise any special defense other than alleging that they untimely paid the outstanding rental fee on July 21, 1990. On October 11, 1990, the defendant and her daughters met with a rental agent and an attorney for the plaintiff. This meeting resulted in the parties' entering into a stipulated agreement under which judgment would enter in favor of the plaintiff with a final stay of execution until February 28, 1991. The defendant agreed to pay the outstanding arrearage of $1018 along with use and occupancy fees. The defendant agreed to vacate the premises on February 28, 1991. The court questioned the defendant about her understanding of this agreement. On October 11, 1990, the court rendered judgment in accordance with the stipulation. The defendant signed the judgment pro se.

On December 21, 1990, the defendant, with the assistance of counsel, filed a motion to open the judgment. In her motion, the defendant claimed that the plaintiff's agent told her not to seek the assistance of counsel and that she was informed on October 11 that if she did not sign the stipulation she would be evicted immediately. She claimed that she entered into the stipulation without understanding its terms or the consequences of agreeing to a final stay of execution until February 28, 1991. The defendant also claimed that her husband, who had supported the family, abandoned her and the children in September, 1990.[2] In the affidavit that accompanied the motion to open, the defendant acknowledged that she had read the motion to open and that the statements contained in it were true. The motion to open indicated that testimony would be

---

[2] The defendant's husband did not appear at the October 11, 1990 hearing. A judgment of default was entered against him. He is no longer involved in this action.

required. The defendant maintains that she would not have signed the stipulation if she had had the assistance of counsel.

On January 17, 1991, a hearing was held before the court, *Melville, J.*, on the motion to open the judgment. The court also conducted a canvass of the defendant at the October 11, 1990 hearing concerning the stipulated judgment. The defendant's counsel argued at the hearing on the motion to open that her client did not knowingly enter into the stipulated agreement. The defendant did not provide the court with a transcript of the October 11, 1990 hearing. The judge could not remember exactly how he canvassed the defendant but acknowledged that he normally explains the consequences of a judgment, especially to pro se parties. The defendant's counsel argued that the defendant may be entitled to raise the defense of no good cause and also the equitable doctrine against forfeiture. The defendant's counsel noted that the no good cause defense was not recognized in Connecticut but had been recognized in another jurisdiction. Counsel failed to produce a copy of the case dealing with the defense of no good cause. The defendant did not request a continuance to obtain either the transcript of the October 11 proceeding or a copy of the case dealing with the no good cause defense.

The court denied the motion to open on the basis of several factors. It noted that the defendant admitted all the necessary facts to support an eviction. The defendant had the opportunity to retain an attorney before signing the stipulation, but she did not retain one. The court further noted both that that motion, which was filed on December 26, 1990, would require the presentation of evidence and that the defendant failed to prepare her case adequately concerning the propriety of the special defenses and the charge that the plaintiff's agent told the defendant not to retain an attorney.

We must determine whether the trial court's failure to open the stipulated judgment was an abuse of discretion. In determining this issue, we will also address the defendant's claim that the trial court was required to hold an evidentiary hearing but refused to do so in this case.

A stipulated judgment constitutes a "contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction." *Bryan* v. *Reynolds,* 143 Conn. 456, 460, 123 A.2d 192 (1956). A stipulated judgment allows the parties to avoid litigation by entering into an agreement that will settle their differences once the court renders judgment on the basis of the agreement. *Gillis* v. *Gillis,* 214 Conn. 336, 339–40, 572 A.2d 323 (1990). A stipulated judgment, although obtained by the consent of the parties is binding to the same decree as a judgment obtained through litigation. Id. "It necessarily follows that if the judgment conforms to the stipulation it cannot be altered or set aside without the consent of all the parties, unless it is shown that the stipulation was obtained by fraud, accident or mistake." *Bryan* v. *Reynolds,* supra, 460–61.

A court's ability to open or modify a judgment is governed by statute[3] and rule of practice.[4] *Batory* v.

---

[3] General Statutes § 52-212a provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court."

[4] Practice Book § 326 provides in part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which it was rendered or passed. The parties may waive the provisions of this paragraph or otherwise submit to the jurisdiction of the court. . . ."

*Bajor,* 22 Conn. App. 4, 8, 575 A.2d 1042, cert. denied, 215 Conn. 812, 576 A.2d 541 (1990). The defendant timely filed her motion to open the stipulated judgment within four months from the date that judgment was rendered as required by General Statutes § 52-212a and Practice Book § 326.[5] Because the decision to open a judgment falls within the trial court's discretion, our review is limited to a determination of whether the trial court abused its discretion or reached an unreasonable result. *Gillis* v. *Gillis,* supra, 340; *Batory* v. *Bajor,* supra. Every reasonable presumption in favor of the court's ruling on the motion to open will be given by a reviewing court. *Gillis* v. *Gillis,* supra.

The defendant claims that the trial court refused to conduct an evidentiary hearing to establish cause for opening the stipulated judgment. "The opportunity to be heard at a meaningful time and in a meaningful manner is constitutionally required to meet currently accepted standards of procedural due process in the area of property rights." *Kukanskis* v. *Griffith,* 180 Conn. 501, 509–10, 430 A.2d 21 (1980); *Bartley* v. *Bartley,* 27 Conn. App. 195, 197, 604 A.2d 1343 (1992). We find that the trial court did not deprive the defendant of an opportunity to present evidence on her claims. The defendant's motion to open the judgment stated that oral argument was requested and that testimony was required. The court questioned the defendant's counsel as to any possible defenses to the eviction. The defendant's counsel mentioned two possible defenses but failed to produce any case law supporting the defense of no good cause for eviction. The defendant also failed to produce a transcript of the October 11 proceedings. That transcript was needed to support the defendant's claim that she did not understand the stip-

---

[5] The defendant's motion to open did not allege that a defense existed at the time of the rendition of judgment as required by General Statutes § 52-212 (a).

ulated agreement. The trial judge could not remember his exact canvass and questioning of the defendant concerning this stipulated agreement, which was entered three months before the motion to open was heard. In the absence of evidence to the contrary, the judge correctly assumed that he conducted his regular canvass of the defendant before accepting the stipulated judgment. The defendant was not denied an opportunity to present evidence supporting her claim to open the stipulated judgment. The defendant was not prepared to present evidence as is shown by the court's concluding remark: "You should have known by the issues you have raised that evidence was going to be required to support your position."

We now examine whether the court abused its discretion by refusing to open the stipulated judgment. Our task is to review the defendant's actions and her remarks about the stipulation to determine whether a reasonable person would find that the defendant agreed to leave the apartment by February 28, 1991. *Gillis* v. *Gillis,* supra, 341. The defendant's subjective understanding of the stipulated agreement is not relevant to our decision. Id. The transcript of the October 11, 1990 hearing reveals that the trial court adequately explained the requirements of the stipulated agreement. The judge stated that "[t]he defendants are going to be permitted to stay on the premises through February 28, that is, the end of February, 1991, provided they pay use and occupancy monthly payments." The judge warned "[n]ow, if you miss any of these payments, then the landlord can evict you immediately. Do you understand that?" The defendant responded, "Yes." The judge clearly stated that the defendant had to vacate the apartment on February 28, 1991.[6]

---

[6] The following dialogue took place:

"The Court: You should understand that on February 28 you must leave the premises.

This summary process action is based on a claim of nonpayment of rent for July, 1990. The defendant sought to raise the defense of lack of good cause for eviction. This defense was based on the claim that the defendant's husband was responsible for the late payment of the July rent. The husband abandoned the defendant and her children in September, 1990, leaving her with inadequate funds. The husband's abandonment of the defendant in September is not relevant to failure timely to pay the July rent. The defendant signed an answer admitting the allegations in the plaintiff's complaint but alleged a late payment on July 21, 1990. This admission by the defendant establishes cause for the eviction.

As to the equitable doctrine of relief from forfeiture, the court was aware of this defense but chose not to use it in this case. " 'The doctrine against forfeiture cannot be dilatorily invoked to eviscerate the statutory mandate of our summary process laws. Under circumstances, however, where the conscience is shocked or the forfeiture unconscionable, the doctrine against forfeiture should be an available shield to the tenant.' " *Mobilia, Inc.* v. *Santos,* 4 Conn. App. 128, 131, 492 A.2d 544 (1985), quoting *Zitomer* v. *Palmer,* 38 Conn. Sup. 341, 346, 446 A.2d 1084 (1982). The landlord in *Mobilia, Inc.* v. *Santos,* supra, instituted a summary process

"Ms. Lamothe: Yes.

"The Court: You don't have a right to further stay of execution. They have given you the maximum. O.k.?

"Ms. Lamothe: O.k.

"The Court: There is nothing I could do to help you on this, and I would suggest that you start looking immediately for alternate accommodations, because come February 28, if you don't have any place to go, you are going to have to get out anyway. Do you understand that?

"Ms. Lamothe: Yes.

"The Court: Any question about that?

"Ms. Lamothe: No. I understand.

"The Court: Any questions, counselor?

"Mr. Henderson: No."

action because the tenants paid only $140 of the required $170 monthly rent. The tenants raised a special defense that sought equitable relief against forfeiture claiming that an eviction would cause substantial hardship and force a sale of their mobile home. We upheld the trial court's granting of the plaintiff's motion to strike this special defense. In the present case, we cannot say that the court's conscience is shocked or that forfeiture is unconscionable.

We recognize that Connecticut courts have implemented the equitable doctrine against forfeiture to prevent a tenant's eviction in a summary process action for failure to pay rent. See *Fellows* v. *Martin,* 217 Conn. 57, 66, 584 A.2d 458 (1991). Our Supreme Court noted that "[t]he doctrine against forfeitures applies to a failure to pay rent in full when that failure is accompanied by a good faith intent to comply with the lease or a good faith dispute over the meaning of a lease." Id., 69. The defendant failed to plead or to establish either one of the requirements listed in *Fellows* v. *Martin,* supra, to invoke the equitable doctrine against forfeiture. The defendant was required to pay the rent on the first day of each month. On the basis of the defendant's statements and actions at the October 11 hearing, a reasonable person would conclude that she assented to the terms of the stipulated judgment and realized that she had to vacate her apartment on February 28, 1991. Thus, the court did not abuse its discretion in refusing to open the stipulated judgment.

The judgment is affirmed.

In this opinion FOTI, J., concurred.

LAVERY, J., dissenting. I disagree with the majority's conclusion that the trial court conducted a proper evidentiary hearing on the defendant's motion to open the stipulated judgment.

As the majority correctly points out, a stipulated judgment is a " 'contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . .' " (Citations omitted.) *Gillis* v. *Gillis,* 214 Conn. 336, 339, 572 A.2d 323 (1990). Because the basis for the stipulated judgment is a contract between the parties, it may properly be set aside if the contract was arrived at by fraud, accident or mistake. Id., 340. It is undisputed that a defendant has a procedural due process right to an opportunity to be meaningfully heard before property rights can be taken away. *All Brand Importers, Inc.* v. *Department of Liquor Control,* 213 Conn. 184, 208, 567 A.2d 1156 (1989); *Kukanskis* v. *Griffith,* 180 Conn. 501, 509–10, 430 A.2d 21 (1980). I cannot agree with the majority, however, that the defendant in this case had such an opportunity.

At the start of the hearing on the defendant's motion to open, the trial court immediately focused on the hearing in which the stipulation was entered.[1] From that point on, the hearing was dominated by the court, focusing on its canvass of the defendant in the prior

---

[1] The hearing opened as follows:

"The Court: Housing Authority of Stamford and Lamothe.

"Defense Counsel: Good morning, Your Honor. Roberta Hatch of legal services representing the defendant, Lucienne Lamothe, the moving party.

"Plaintiff's Counsel: And, Lawrence Riley, representing the Plaintiff, Stamford housing authority.

"The Court: Why don't you tell me a little bit about this.

"Defense Counsel: Your Honor, very briefly, Mrs. Lamothe came to court on October 11 without assistance of counsel. She had a good defense. She had two defenses. She was not represented. She entered into a stipulation. The Stamford housing authority was represented. She did not have the benefit of an interpreter, who is here.

"The Court: An interpreter?

"Defense Counsel: Yes, she speaks Creole. She does speak English.

"The Court: But she didn't speak English?

"Defense Counsel: She does speak English, but she did not understand fully that she had a right to go to trial.

"The Court: Wait a minute. Was this before me?"

hearing.[2] At one point in the hearing, the plaintiff's counsel interjected, "I suppose we can hear testimony if defense counsel believes they have some other grounds for reopening the judgment, but I would submit to the court that it's a futility . . . ." The counsel for the defendant was then allowed briefly to mention her legal arguments, but was not given an adequate opportunity to develop these arguments, nor was she given an adequate opportunity to present her witnesses. Shortly thereafter, the court ended the hearing, addressing the defendant's counsel: "You should have known by the issues you have raised that evidence was going to be required to support your position. Motion is denied."

In her brief, the defendant indicates that at the hearing she was prepared to assert two defenses in support of the motion to open. First, she intended to assert equitable defenses that are recognized in Connecticut. In this case, the defendant's husband, who was responsible for the nonpayment of rent leading to the stipu-

[2] The court pressed the defendant's counsel as to whether she was attacking the actions of either the housing authority's counsel or the court regarding the stipulated judgment.

"The Court: You are attacking a man's right to make a living, by such an allegation, or a woman's right to make a living here. Now, I don't mind you doing that, because that is what this court is all about, but I don't want that done frivolously, and if you intend to make that kind of claim you had better be prepared to prove it, and today is your day in court, then I—You know. There are two things you have claimed here. You claimed that the court did not properly canvass this lady so that it would satisfy that what she did was what she wanted to do. And secondly, you are claiming that an officer of this court, the housing specialist, and an officer, an attorney, that his license to practice in this state, both were either oppressive or unethical in the manner in which they conducted their discussion. Now, that's what you in essence have said by the motion you have put before the court today.

"Defense Counsel: The defendants perceived that they had no choice.

"The Court: Counsel, you are now representing them. You filed this motion. You put the language into what you thought it meant, and I'm interpreting it the way I am, is that not what you are saying? You raise orally a due process claim which says that this lady didn't have a meaningful hear-

lated judgment, abandoned the defendant and her five minor children. The defendant's husband was the head of the household, the sole support of the family, and the sole manager of the family finances. Further, the defendant intended to introduce testimony to the effect that a housing authority employee had advised her that legal representation was not necessary in the resolution of her situation. At the time the defendant signed the stipulated judgment, she was not represented by counsel and her knowledge of the English language was questionable. The defendant was prepared to testify at the hearing that she perceived that her only choice was to sign the stipulated judgment because she was told by the plaintiff's rental agent that she had two alternatives—either proceed to trial and be evicted

---

ing, and it was not meaningful because of the oppression of the housing specialist, the attorney for the plaintiff, and the insufficient activity on the part of the court. Those are serious allegations, Ma'am. I expect that you are going to prove each one of them, or at least one sufficient to open this judgment."

The exchange continued:

"Defense Counsel: I do not believe that she entered into this knowingly, knowing what her rights were.

"The Court: I can't make that determination without a transcript of the proceedings, without her responses to the questions that the court asked. Ordinarily the court makes it a practice to inquire of the party that if they have any questions after all is explained, do you have any questions about this agreement, and if it gets no answer, then it has to assume that the party has no questions. I don't know of any other reason why it shouldn't assume that, unless there is something on the record that so indicates it, and if the court neglected to pursue that, then maybe you do have a point. The other thing is that I definitely make it a practice, and I don't know whether I did it in this case, and that is why I need a transcript, to explain the significance of the agreement in terms of when they have to get out, and what options they have to move for a reopening, or a further stay of execution. I usually go through that very carefully. Maybe I was neglectful of doing that in this case. I can't recall this case at all. All that I can recall is what my practice is, and in that instance, I cannot make a decision on this case without any information concerning that. With regard to this other matter, she was advised that she should not seek the advice of counsel. That is different from saying she didn't need an attorney. Now, that requires, I think, some testimony."

within a week, i.e., October 18, 1990, or enter into an agreement whereby she would agree that judgment for possession could enter in favor of the plaintiff, and that she would pay the accumulated arrearage, court costs and current rent according to a fixed schedule. If she chose the latter alternative, she understood that the family would be granted a final stay of execution through February 28, 1991. The defendant intended to assert an equitable argument that she and her children had been abandoned by her husband, the family's breadwinner, and that she was not responsible for the circumstances that caused the plaintiff to seek an eviction in the first place. *In addition, the defendant paid all of the arrearages, court costs, fees, and current rent as required by the stipulated judgment. The defendant was prepared to assert that the equities of the situation should allow her and her children to remain in their home.*

In *Fellows* v. *Martin,* 217 Conn. 57, 66, 584 A.2d 458 (1991), our Supreme Court stated that "Connecticut Appellate and Superior Courts have applied the ancient equitable doctrine against forfeitures to summary process actions for nonpayment of rent and have occasionally, on the particular facts of each case, granted relief to the tenant." Although the merits of the defendant's equitable argument are not before this court at this time, it was properly within the province of the trial court, and should have been fully explored in an evidentiary hearing.

Second, the defendant intended to assert a public policy argument based on case law from a foreign jurisdiction. In particular, the defendant cites *Maxton Housing Authority* v. *McLean,* 313 N.C. 277, 328 S.E.2d 290 (1985), in which the North Carolina Supreme Court held that in order to evict a tenant from low income public housing there must be a finding of fault on the part of the tenant in failing to pay rent. Id., 280. In *McLean,*

the court set forth the following framework to utilize when dealing with such a case: "Upon a showing by the Authority that the rental payment has not been made as required by the lease, it is presumed that the failure to pay the rent is good cause for eviction. The burden thereupon shifts to the tenant to produce evidence to prove a lack of fault on his part in failing to make the rental payment." Id. The court based its decision on the public policy of the state and federal governments to provide sanitary and safe housing for persons of low income. Id., 279–80. In *McLean,* it was the defendant's former spouse who was primarily responsible for the acts that led to the eviction proceedings. In this case, there is a similar claim regarding the role of the defendant's former spouse in the events leading to the stipulated judgment. Although *McLean* is not binding on courts of this state, it raises legal issues that should be decided in the first instance by the trial court, and possibly be the subject of subsequent appellate review.

"At the core of due process is the requirement for an impartial tribunal. See *Tumey* v. *Ohio,* 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927)." *Rado* v. *Board of Education,* 216 Conn. 541, 556, 583 A.2d 102 (1990). In this case, the court focused on the defendant's failure to produce a transcript of the prior hearing rather than allowing the defendant to put on her case that the contract of stipulated judgment was induced by duress and mistake, and that she had equitable defenses as set forth above, thus depriving the defendant of an opportunity for a meaningful hearing.

I would remand the case to the trial court to conduct a full evidentiary hearing on the defendant's motion to open the judgment.