[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case the defendant seeks to reopen a stipulated judgment which concluded a summary process action brought on the basis of non-payment of rent. Her motion raises interesting questions regarding the relationship between stipulated judgments and the mutual rights and responsibilities of Section 8 landlords and tenants. For the reasons set forth below the defendant's motion is granted. The stipulated judgment is reopened and the parties are directed to recalculate the defendant's arrearage for the period November 1990, through May 1991, and modify the stipulation accordingly if the recalculation discloses that the arrearage figure set forth in the stipulated judgment is incorrect.
 I.
The plaintiff is a provider of Section 8 housing and as such is subject to state and federal statutes and regulations governing the administration of that program. Defendant has been a tenant of plaintiff for a number of years. Each April, pursuant to federal regulations, defendant participates in the annual recertification process which identifies the number of persons residing in the rental unit together with their income and expenses for the purpose of determining defendant's rent for the year beginning June 1. In accordance with the June, 1990 recertification, defendant's portion of the rent, based on two daughters living with her, was $295 per month.
In November, 1990, defendant advised plaintiff via a phone call that an adult daughter was no longer living with her, such that in the parlance of Section 8, there was a "change in her family composition." This change triggered the need for an "interim recertification" for the purpose of determining whether there should be a reduction of defendant's rent. Under federal law both the tenant and landlord have certain obligations with respect to the interim recertification process. Generally, the owner must obtain certain information from the tenant, verify the tenant's resources and complete appropriate paperwork. The tenant must report changes in family size and income and provide proof thereof. In connection with these responsibilities plaintiff's office manager informed defendant that she would have to provide a notarized statement affirming that her CT Page 6412 daughter no longer resided with her and also complete a "budget sheet" detailing defendant's family size, expenses and income. Defendant evidently furnished a budget sheet, but did not file the sworn affidavit despite a number of phone calls and messages from plaintiff. Plaintiff never advised defendant in writing of defendant's obligations with respect to an interim recertification, although the evidence discloses that defendant was fully aware of those obligations, having been recertified on an interim basis on at least four previous occasions, most recently in August, 1990.
On or about April 11, 1991, defendant completed the annual recertification process in which the rent for the year beginning June, 1991 was set at $183 per month, a reduction from the previous rent of $295. This reduction reflected that plaintiff's daughter no longer resided with her. On April 26 — two weeks after the annual recertification — plaintiff and defendant entered into a stipulated judgment, thereby resolving a January summary process action alleging non-payment of January's rent. In that action, defendant, appearing pro se, alleged in a special defense that she was unable to pay the last agreed upon rent because her daughter, who contributed to that rent, was no longer residing with her. Defendant acknowledged in her special defense that she had not complied with plaintiff's request that she provide plaintiff with an affidavit certifying that her daughter no longer resided with her.
The April 26 stipulated judgment recognized an arrearage of $1184, based upon the monthly rent of $295 set forth in the 1990 lease. The arrearage was to be repaid at the rate of fifty dollars per month. In accordance with the April 11 annual recertification the stipulation also provided that the defendant would pay monthly rent of one hundred eighty three dollars, effective June 1, 1991.
On February 13, 1992, the defendant filed Motion to Modify or Vacate a Stipulated Judgment. Defendant's principal claim is that the arrearage figure set forth in the stipulation ($1184) is incorrect because of the plaintiff's failure to comply with the federal requirements governing interim recertifications. Had the plaintiff complied with these rules, defendant claims that the arrearage figure would be lower in that it would have been calculated on the basis of a monthly rent of $183 instead of $295. For its part the landlord insists that it was the tenant who failed to comply with federal law by not filing a sworn affidavit certifying that her daughter no longer resided with her. Plaintiff insists that had the tenant completed the affidavit the rent would have been reduced.
Resolution of defendant's motion requires a consideration CT Page 6413 of state law rules governing finality of judgments and federal law governing Section 8 housing.
 II. A.
The Section 8 program is established by 42 U.S.C. § 1437
et seq. Implementing regulations are found at 24 C.F.R. § 880.100 et seq. The purpose of the Section 8 program is to provide lower income families with decent, safe and affordable housing through the use of a system of housing assistance payments. To be eligible for occupancy, tenants must be low income. Priority for occupancy is given to families, handicapped individuals and persons displaced by governmental action. Although tenants are required to pay an amount of rent commensurate with their ability to pay according to a formula mandated by the so-called Brooke Amendment, id., landlords participating in the Section 8 program receive full "market rent" for each unit leased, by a combination of payments from the tenant and from the participating Public Housing Authority (PHA). The PHA makes up the difference between the tenant's share of the rent and the "market rent" received by the landlord.
The tenant's portion of the rent is principally a function of his family composition, income and expenses. In order to properly calculate the tenant's portion of the rent, federal regulations require that the tenant and landlord participate in an annual recertification process, the procedures for which are set forth in Paragraph 5 of the Department of Housing and Urban Development Handbook (HUD Handbook).
Sec. 5-4 of the HUD Handbook requires the landlord to:
1. Notify the tenant that recertification is due;
 2. Interview tenant to obtain information on income, assets, family composition, and allowances;
3. Verify tenant's income, assets and allowances;
4. Complete applicable worksheets; and
5. Notify the tenant of any increases in rent.
The tenant must provide the information required for recertification including information necessary to verify the tenant's family composition, income and assets. If the tenant does not provide the necessary information within the time frame CT Page 6414 set forth in the regulations, his rent can be increased to what is known as "market rent."
Federal regulations additionally require a tenant to report any interim changes with respect to household composition, assets and income that may occur prior to the next annual recertification. Sec. 5-8 of the HUD Handbook requires the tenant to notify the owner if any household member of the unit moves out or if any adult member of the household obtains employment. Once an owner has learned that the tenant has:
 "experienced one of the changes in income or household composition listed in paragraph 5-8, the owner must immediately notify the tenant in writing of the need to recertify. The owner's notice should refer the tenant to the lease clause which requires the interim review/adjustment, give the Tenant 10 calendar days to respond to the notice and advise the Tenant that his/her rent could be increased to the market rent if the deadline is not met." (Emphasis supplied)
Assuming that the tenant responds to the written notice of interim recertification, the landlord is to proceed in accordance with the same certification procedures set forth in paragraph 5-4 of the HUD Handbook. If the tenant does not respond to the written notice, the landlord may charge the market rent.
Based on the foregoing the defendant properly notified the owner when her daughter moved out. The owner correctly informed the defendant, through a phone call, that she would be required to (1) provide a sworn affidavit verifying her daughter's moving and (2) complete a "budget sheet." The plaintiff, however, did not provide the written notice required by paragraph 5-13 of the HUD Handbook. The defendant never provided the sworn affidavit, but did complete the budget sheet. Neither party, therefore, fully complied with federal requirements governing interim recertification. The plaintiff did not provide written notice to the defendant of her obligation to comply with the recertification process, although the record discloses that plaintiff not only provided actual, albeit informal notice to the defendant of her obligations, but also attempted to contact defendant on a number of occasions when defendant did not provide the sworn affidavit. Likewise, the defendant knew of her responsibility to comply with the interim recertification process, both because plaintiff informed her of her obligations and because defendant had been through the process on at least four previous occasions.
Under these circumstances it is fair, just and reasonable CT Page 6415 to require the parties to complete the interim recertification process in accordance with their respective obligations under federal law. The parties, therefore, are to undertake the interim recertification process for the purpose of determining the defendant's rent for the period November, 1990 through May, 1991. If it is determined, in accordance with HUD procedures, that defendant's rent should be reduced for this period, the remaining question is whether the stipulated judgment should be reopened for purposes of recalculating the arrearage based on the reduced rental amount.
 B.
A stipulated judgment "may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction." Solomon v. Keiser, 22 Conn. App. 424
(1990) (internal cites omitted). General Statutes Sec.52-212a and Practice Book Sec. 326 establish the procedures for setting aside or opening judgments. "Unless otherwise provided by law, . . . any civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months" of the entry of the judgment. Practice Book Sec. 326. This rule applies to stipulated judgments as well as to judgments rendered upon controverted facts. Id., at 426. By judicial gloss, this requirement has been interpreted to mean that a stipulated judgment cannot be reopened after four months of its rendition unless the movant can demonstrate that the judgment was obtained by fraud, duress, accident or mistake. Id. The decision to reopen a judgment falls within the court's discretion. Housing Authority v. Lamothe, 27 Conn. App. 755, 760 (1992).
The motion to reopen in the present case was filed well after four months from the date of the judgment. Defendant claims it should be reopened because it was procured by fraud. An act or statement is fraudulent if: (1) it was untrue and known to be untrue by the party making the statement; (2) the statement was made to induce the other party to act on it; and (3) the party did act on it to this detriment. Miller v. Appleby, 183 Conn. 52 (1983). Without reviewing in detail the factual basis for defendant's claim, it is sufficient to note that a careful review of the record and proceedings in this case disclose no evidence of any conduct or statements by plaintiff or its counsel that are remotely suggestive of fraud. It is clear, however, that the parties, at the time of the stipulation, mistakenly believed that defendant's correct rent was $295 per month for the period in question. Because neither party followed the correct interim recertification procedures, the parties may have made a mistake as to the correct arrearage figure. On those grounds therefore, the judgment is reopened; CT Page 6416 Solomon v. Keiser, supra, at 427; for the purpose of allowing the parties to determine, in accordance with HUD regulations, whether defendant's rent for the period November, 1990, through May, 1991, was properly calculated at $295 per month or should have been reduced to $183 based on the departure of defendant's daughter from the apartment. If it is determined that the arrearage figure in, the stipulation is incorrect, the judgment shall be modified accordingly.
ROBERT L. HOLZBERG, J.